# CASES DETERMINED,

AT THE

## August Term, 1877.

---

## GIBSON VS. GIBSON.

SLANDER: PARTIES PLAINTIFF: HUSBAND AND WIFE. *(1) What words actionable. (2–4) Slander of unmarried woman; in whose name action lies after her marriage.*

1. In this state, words spoken of an unmarried woman, charging her with fornication, are actionable *per se*. *Mayer v. Schleichter*, 29 Wis., 646, and earlier cases.
2. Slander for words actionable *per se*, spoken against a woman who has since married, must be brought in the name of the husband and wife; and the rule is not changed by our statutes securing to the wife the enjoyment of her separate *property* as though she were a *feme sole*, and enabling her to sue alone in relation thereto.
3. "Things in action," in the statutory definition of personal property (subd. 14, sec. 1, ch. 5, R. S.), comprise only such rights of action as may be the subject of sale and transfer, and not mere rights of action *ex delicto*, for personal wrongs; and the latter are not included in the personal property *owned* by a woman at the time of her marriage, which (by sec. 2, ch. 95, R. S.) continues to be her sole and separate property after marriage.
4. Where such action for slander, begun by the woman before her marriage, is pending after the marriage, it is error for the court to refuse an application by the husband to be made a plaintiff.

APPEAL from the Circuit Court for *Monroe* County.

The case is stated in the opinion. The defendant appealed from a judgment in favor of the plaintiff.

For the appellant, a brief was filed, signed by *P. G. Stroud* and *L. Crouch* as his attorneys, and by *A. Scott Sloan*, of counsel, and the cause was argued orally by *Mr. Stroud* and *Mr. Sloan.*

*C. C. Remington*, for the respondent.

COLE, J.   This was an action for defamation, by words imputing to the plaintiff, a female, want of chastity, or charging her with being a common prostitute.   When the action was commenced, the plaintiff was unmarried and under twenty-one years of age.   She afterwards married the son of the defendant.   After answer, the defendant and the husband of plaintiff applied, by sworn petition and affidavit, to the circuit court where the action was pending, stating or representing that the plaintiff was then over twenty-one years of age, and was the wife of one of the petitioners, and asking that the title of the cause be changed, that the husband be made a party plaintiff, and that the suit be thereafter prosecuted in the names of the husband and wife.   The circuit court changed the title of the suit by inserting the married name of the plaintiff, but denied the application to make the husband a party plaintiff.   The question presented at the outset on the record is, whether this ruling is not fatal to the judgment, for the reason that the husband was a necessary party plaintiff to the action.   We think the question must be answered in the affirmative.

The alleged slanderous words were actionable *per se (Benaway v. Conyne*, 3 Pin., 196; *Ranger v. Goodrich*, 17 Wis., 78; *Mayer v. Schleichter*, 29 id., 646), and the law, as we understand it, is as stated by Mr. Townshend, in his work on S. & L., § 301, that "for language actionable *per se*, published concerning a married woman, or concerning a woman who afterwards marries, the action should be brought in the name of the husband and wife.   In such a case the damage is to both plaintiffs, and the right of action, in case of the death of

the husband, survives to the wife; but if the wife dies before verdict, the action abates. For language concerning a married woman, but actionable only because of special damage to the husband, the husband must sue alone."

Substantially the same rule was laid down in *Benaway v. Conyne, supra,* by WHITON, J., when considering an objection to the declaration in that case to the effect that it did not show that the plaintiffs were married when the slanderous words were uttered. He says: " Without stopping to inquire whether this is a fair or a hypercritical construction of this averment, we are entirely of opinion that it is entirely immaterial, for the purpose of sustaining this action, whether the plaintiffs were married before or since the words were uttered. Our criminal code punishes both adultery and fornication, and if Mrs. Conyne was unmarried, she could have maintained an action in her own name against the defendant for speaking the words set out in the declaration. *Miller v. Parish,* 8 Pick., 384. And her marriage, after the words were spoken, to her present husband, would make it necessary to join him as a plaintiff in the suit." pp. 201–2. Mr. Starkie lays down the rule in substantially the same way. 1 Starkie on Slander, p. 349. See also 1 Chitty's Pl., 11th Am. ed., 74; *Beach v. Beach,* 2 Hill, 260; *Beach v. Ranney,* id., 309; *Johnson v. Dicken,* 25 Mo., 580. In *Beach v. Beach, supra,* the action was brought by the wife, while living apart from her husband, under articles of separation, in the names of her husband and herself, for slanderous words spoken of her. It was held that a release of the cause of action, given by the husband after suit was commenced, was a bar to the recovery. In other cases of *torts* committed to the wife, as an assault and battery or other actionable wrongs to her person, where the suit is brought in the lifetime of the husband, he must be made a party plaintiff (*Barnes v. Martin,* 15 Wis., 240; *Kavanaugh and wife v. The City of Janesville,* 24 id., 618), and the damages, when collected, belong to him. Reeve's Domestic Rel.,

63. If the wife survives, she may sue the wrongdoer for any injury to her person or property, the same as if she had been *sole* when she received it. 1 Chitty's Pl., *supra*.

It was argued by the learned counsel for the plaintiff, that, under the laws of this state in regard to the rights of married women, the wife might maintain an action for slander concerning her without joining her husband, and that the damages, when recovered, would belong to her as her separate estate. We were not, however, referred to any statute which gives her that right, or which assumes to place her on the footing of a *feme sole* in respect to such injuries; and we certainly know of none. In New York it is expressly enacted, that "any married woman may bring and maintain an action in her own name, for damages, against any person or body corporate, for any injury to her person or character, the same as if she were sole; and the money received upon the settlement of any such action, or recovered upon a judgment, shall be her sole and separate property." Sec. 7, ch. 90, Laws of 1860. Of course there can be no doubt about her right to maintain an action for slander where such a statute exists. And under certain circumstances she is allowed by statute in Pennsylvania to maintain an action for defamation without the joinder of her husband. *Rangler v. Hummel*, 37 Pa. St., 130. Our statute secures to the wife her separate property, and protects her in its enjoyment, as though she were a *feme sole*. She therefore may bring an action in her own name for a trespass to her real or personal property during coverture. *Boos v. Gomber*, 23 Wis., 284. But the statute does not enact that a cause of action on a personal tort to the wife, either before or after coverture, shall be deemed her property; nor does it declare that the damages recovered in such an action shall be her separate estate. It would be a forced and unnatural construction of the statute to give it such an interpretation. A right of action for slander does not survive the death of the party injured, — *actio personalis moritur cum persona;* and this

court decided in *Noonan v. Orton*, 34 Wis., 259, that an action for a personal injury was not a chose in action, within the meaning of the bankrupt law, which passed to the assignee. It was not assignable at common law, either in law or equity. The statute plainly relates to what is property in the proper sense of the term; that which may be held, used, assigned conveyed and devised; it defines the rights of the wife in respect to such property, but does not attempt to remove all the disabilities of coverture. Consequently it was held by this court, in effect, in *Barnes v. Martin et ux.* and *Kavanaugh et ux. v. The City of Janesville, supra*, that in actions for personal injuries to the wife, both the husband and wife should join, because both were interested in the subject matter of the action, though the damages, when recovered, belonged to the husband. Therefore, in the case before us, we are very clear that the husband was a necessary party, as the damages recoverable in the action would belong to him; and the circuit court erred in not granting his application to be made a party plaintiff. The wife could not prosecute the suit in her own name; nor do we think there is anything in ch. 135, R. S., which changes the law on the subject.

In our investigations we found the decisions in *Berger v. Jacobs*, 21 Mich., 215, and *Leonard v. Pope*, 27 id., 145, where it is held that a married woman may maintain an action in her own name, without joining her husband, for a slander concerning her, or an assault and battery committed upon her, during coverture, and that the damages, when recovered, became her separate property. The statute of Michigan in regard to the rights of married women is substantially like our own, and the authority of so able and respectable a court as the supreme court of Michigan is entitled to great consideration. But nevertheless we think the construction which we have given our statute is the correct one, and that it is not in accord with either the spirit or intent of that enactment to hold that the right to recover damages for personal injuries

to the wife should stand upon the same ground as a chose in action or a pecuniary claim or right accruing to her during coverture, and that such damages, when recovered, would constitute and become her individual property. We are unable to believe that it was the purpose of the legislature to make such a change in the law; for if it had been the purpose, we think quite different language would have been used in the statute to make that intention clear. We therefore cannot adopt the view which the supreme court of Michigan has taken of the effect of this legislation.

It follows from these views, that the judgment of the circuit court must be reversed, and the cause be remanded for further proceedings according to law.

*By the Court.* — So ordered.

On motion for a rehearing, plaintiff's counsel argued that *Noonan v. Orton*, 34 Wis., 259, cited in the above opinion, is inapplicable in this case, (1.) Because that case turns entirely upon the extent to which the general term, " choses in action," in the bankrupt law, is " restricted by other words therein," and merely holds that, *in consequence of those restrictive words*, a right of action for a personal injury does not pass by a general assignment in bankruptcy; and (2.) Because, as that case arose under a statute which provides for taking property from the former owner and vesting it in another, while this case arises under a statute for allowing property to remain in its former owner, the terms of the former statute should be construed strictly, while those of the latter should be construed liberally. ALLEN, J., in *Sherman v. Elder*, 24 N. Y., 381, 384; Blackw. T. T., 737, and cases there cited. In accordance with this rule of liberal interpretation applied to the Married Woman's Act, it has been held, without any express statutory provision to that effect, that the wife, simply in consequence of her ownership and right of control, may sue alone in matters affecting her property, or, if she chooses, may

Gibson vs. Gibson.

join her husband. *Goodyear v. Rumbaugh*, 13 Pa. St., 480; *Emerson v. Clayton*, 32 Ill., 493; *Norval v. Rice*, 2 Wis., 22; *Wooster v. Northrup*, 8 id., 256. 2. That the decisions of this court, cited in the above opinion as directly determining the question whether the wife can sue alone for a personal tort, are all inapplicable here, because in those cases the cause of action either arose before the passage of the Married Woman's Act (as the record shows to have been the fact in *Benaway v. Conyne*, 3 Pin., 196), or was a wrong suffered by the wife *after marriage* (as in *Barnes v. Martin*, 15 Wis., 240, and *Kavanaugh v. Janesville*, 24 id., 618); that a difference in the wife's rights in respect to torts suffered before marriage and those suffered by her during coverture, results from the difference between secs. 2 and 3, ch. 95, R. S.; that sec. 3, which treats of property acquired during coverture, is limited by its terms to property so acquired " by inheritance, or by gift, grant, devise or bequest " — terms which are inapplicable to rights of action for personal torts, — while sec. 2 secures to the wife the sole use and absolute control of *all* her " real and personal property," however acquired; that the statute of Michigan gives the wife a like absolute control of *all* property acquired by her *after marriage*, and the supreme court of that state accordingly holds that she may sue alone for personal torts suffered by her after marriage; that the supreme courts of Illinois and Iowa, under similar statutes, have held that rights of action for personal injuries to the wife during coverture are *her property*, and that she may sue alone for such injuries. *C., B. & Q. R. R. Co. v. Dunn*, 52 Ill., 260 (4 Am. R., 606); *Musselman v. Galligher*, 32 Iowa, 383. Counsel further contended that the question here depends wholly on sec. 2, ch. 95, R. S., above referred to, and subd. 14, sec. 1, ch. 5, R. S., which defines the term " personal property " as used in the revised statutes;[1] that the term

---

[1] Section 1, ch. 5, R. S., declares that " in the construction of the statutes of this state, the following rules shall be observed, unless such construction

"things in action," in its broad sense, comprehends a demand for damages arising upon a wrong to one's property or person, as well as a demand arising out of contract (Burr. Law Dic.; 1 Chitty's Gen. Pr., 99, and note; 2 Kent's Com., 351; Bishop on M. & D.; § 62; Tomlin's Law Dic., "Chose;" Lilly's Abr., "Chose in Action;" *People v. Tioga C. P.*, 19 Wend., 73); that it is not necessary that such a right should be assignable in order that it may be property, but it is enough that it has a pecuniary value to the person to whom it belongs; that by the original policy of the common law, no possibility, right, title or thing in action could be granted to a third person, because that was regarded as in effect transferring a law suit to a mere stranger, and hence a debt or other chose in action could not be transferred by assignment, except in the case of the king (Story's Eq. Jur., §§ 1039–40); and that it would be absurd to claim that a right of action is not properly a chose in action because it is not assignable, when no choses in action were assignable at the time when that term was first applied to them, and the dividing line between things assignable and things not assignable has not remained stationary for any great length of time (*Zabriskie v. Smith*, 3 Kern., 322, opinion of DENIO, J.). The spirit of the law in regard to the rights of married women as to property acquired before marriage is, that everything of pecuniary value that belonged to her at the time of marriage remains really hers, and subject to her sole use and absolute control, with all that she can get out of it, rents, issues and profits. It was by acquiring her choses in action that the husband, at the common law, acquired the right to bring an action like this. He took it at the same time that he took her other choses in action, and for the same reason. He must sue it with his wife, as he sues for his other choses in action acquired from her. At his

would be inconsistent with the manifest intent of the legislature: ... 14. The words 'personal property,' as used in the revised statutes, include money, goods, chattels, things in action, and evidences of debt."

death, the wife receives it back with her other choses in action, not actually appropriated during his lifetime. The common law took it from the wife and transferred it to the husband as a thing belonging to her at the time of marriage, a thing having value, a thing in action; why does not the statute restore it to her under the same name?

*Mr. Stroud*, for the appellant, in reply, argued among other things, that while subd.14, sec. 1, ch. 5, R. S., was taken from sec. 483 of the code of New York of 1848, the court of appeals of that state construes the words "personal property" as not including rights of action for personal torts *(Pulver v. Harris*, 52 N. Y., 73); and that if these words are construed as including such rights of action in our statutes, it will follow that such rights may be disposed of by a married woman by will (R. S., ch. 97, sec. 1); may be attached (R. S., ch. 130, sec. 4), or applied on an execution, by order of a judge (R. S., ch. 134, sec. 94); would pass to the general assignee of an insolvent debtor (R. S., ch. 161); and would be subject to assessment; that it is plain, therefore, that " things in action " in sec. 1, ch. 5, refer to such rights of action as are usually included in that name, to wit, such as are assignable and survive the party (1 Chitty's Pr., 99, 140); and that the statute, being in derogation of the common law, should be construed strictly, and courts should not add to the uncertainty and confusion created by such statutes, by changing the law farther than the legislature has seen fit to change it. 1 Kent's Com., 464; Dwarris on Stats., 185; *Mayo v. Wilson*, 1 N. H., 55; *Van Horne v. Dorrance*, 2 Dall., 316; *Rice v. R. R. Co.*, 1 Black, 359, *Talbot v. Simpson*, Pet. C. C., 188; *Bear's Adm'r v. Bear*, 33 Pa. St., 527; Talbot, Ch., in *Heard v. Stamford*, 3. P. Wms., 410–11.

Ryan, C. J.   The motion for rehearing is as valuable to the court as to counsel. First impressions of the court may well be wrong; and just criticism of counsel is invaluable in the

administration of justice. Such criticism is always welcome to us, when made, as in this case, with courteous ability and learning.

The learned counsel frankly concedes the rule at common law, which is indeed beyond question, that the husband is a necessary plaintiff in an action for tort to the wife before marriage. The question, therefore, turns entirely upon the construction of the statute, securing to the wife the real and personal property owned by her at the time of marriage. R. S., ch. 95, sec. 2.

We did not overlook, as counsel seems to suppose, that the definition of personal property in ch. 5, R. S., includes choses in action.

The first question, in passing on the argument in support of this motion is, the meaning of that term in the definition itself. The term, *choses in action,* has two recognized significations. It is sometimes used in the broad sense of all rights of action, whether *ex contractu* or *ex delicto.* Its narrower and more general use is confined to assignable rights of action *ex contractu,* and perhaps *ex delicto,* for injuries to property. In this sense, actions *ex delicto* for personal injuries are excluded. *People v. Tioga,* 19 Wend., 73; *McKee v. Judd,* 12 N. Y., 622; *Zabriskie v. Smith,* 13 id., 322; *Pulver v. Harris,* 52 id., 73; *Sommer v. Wilt,* 4 S. & R., 19; *North v. Turner,* 9 id., 244; *O'Donnel v. Seybert,* 13 id., 54; *Comegys v. Vasse,* 1 Pet., 193.

The term may be intended in either of these senses, the broader or the narrower, in the statutory definition; and the question is, which sense it was designed to bear. The intention of the legislature is, of course, to govern; and that is to be gathered, if possible, from the language used. The definitions of sec. 1, ch. 95, are not arbitrary; they are not to be applied when "inconsistent with the manifest intent of the legislature." *Re Goodell,* 39 Wis., 232. The first subdivision of the section provides, that terms shall be construed ac-

cording to common and approved usage, but that technical terms shall be construed in their technical sense. Taking these two rules together, they may establish another rule of construction: that technical terms having more than one meaning are to be taken in their more common and approved sense, when not inconsistent with the apparent intent. And as the term, choses in action, is very generally used and accepted by the profession in its more limited sense, this alone might be a sufficient answer to the argument made for the appellant, to give it the more comprehensive sense.

But the same intent of the legislature, in the use of the term, is discovered, in a more direct and satisfactory manner, from the connection in which the term is used in the definition.

"*Noscitur a sociis*, is an old and safe rule of construction, said to have originated with as great a lawyer and judge as Lord Hale, peculiarly applicable to this consideration. Lord Bacon gives the same rule in a more detailed form, more emphatic here. *Copulatio verborum indicat acceptationem in eodem sensu.* .... We are to be guided in the application of the uncertain by its certain associates." *Attorney General v. Railroad Companies*, 35 Wis., 425.

The definition declares that personal property, as used in the revised statutes, shall include money, goods, chattels, things in action, and evidences of debt. All these other terms signify actual property, the subject of sale and transfer. The term now in question is fenced in between " goods and chattels," and "evidences of debt." *Ex antecedentibus et consequentibus fit optima interpretatio.* Though the term used be general, it must be taken in the restricted sense which will correspond with the other terms with which it is associated. Coke, 2 Inst., 317.

A right of action in tort is not property, and therefore cannot be sold or transferred. It may result in property, by recovery. A judgment in tort is property, and may be

sold or assigned. But the assignment of a judgment in tort does not operate to assign the right of action; and, if the judgment be reversed, the right of action still remains in the assignor. *Pulver v. Harris, supra.* And it is inconceivable that the legislature, associating this term with others all representing actual property, intended a radical change of the law, hidden as it were from observation, by raising rights of action in tort to the dignity of property; or intended us to understand that slander, libel, assault and battery, etc., should be personal property.

Such a construction would work queer rules of property throughout the revised statutes, to which the definition is to apply. For example, it would require the assessment and taxation of the right of action of every citizen who had the misfortune of having been slandered, libeled, assaulted or battered, whether he had brought the action or not, until the statute of limitation should have run upon it. Sec. 1, ch. 18, R. S. *Ex pede Herculem.* Other instances might amplify, but could hardly heighten the absurdity.

So we do not perceive that sec. 2 of ch. 95 takes anything from the definition. And we do not see that the argument of the appellant fares better with the section itself. That secures to the wife the personal property which she owns at the time of marriage. Perhaps the verb, own, cannot strictly be regarded as a technical term; but, both in legal and common use, it implies estate, and applies only to things subject to sale and transfer. *Lister v. Lobley,* 6 Nev. & Man., 340; *Champion v. White,* 5 Cow., 509; *Danforth v. Suydam,* 4 N. Y., 66; *Loonie v. Hogan,* 9 id., 435. And the use of this verb clearly applies the provision to actual property only, and not to possible damages to be recovered in actions *ex delicto.* This is the distinction between rights of action *ex contractu* and rights of action *ex delicto* for personal wrongs. The legislature plainly had in mind things belonging to the wife in property, without reference to mere rights of action for

wrongs done to her person or character. If the legislature had torts against the wife at all in mind, it saw fit to make no change in the law; perhaps judging such rights of action better left to the discretion of the husband. Be that as it may, neither husband nor wife can be properly said to own actions of tort. They may own judgments in tort, when recovered; but they can no more be said to own the discretion to bring such actions, than any other impulse of the will, or motion of the affections.

It is different with rights of action *ex contractu*. There, there is an existing debt due upon the contract, before action and independent of it; a debt which an insolvent or bankrupt must assign; a debt for which the estate of an insolvent or bankrupt is bound. A recovery only ascertains and determines the debt; but the debt itself does not rest on the recovery. In actions for personal torts, no debt precedes recovery; and recovery is not founded on a debt. The injured party has suffered a wrong in his person or character, to which he may submit, if he will. But the law gives him a right of action, if he will, for damages to compensate him for the wrong. The tortfeasor becomes his debtor only upon recovery, and by force of recovery. Before recovery, he is not a debtor at large; after recovery, he is a judgment debtor only. And the term, things in action, is not very happily applied to the right. Things in action are properly things already belonging to a person, but withheld from him, and for the possession of which he has a right of action. His title precedes the action, and is the foundation of it. A recovery determines his title, but does not create it. It is not a naked right to sue for damages, as in tort, but a vested right of property in the thing sued for, independent of the action. In tort, there is no title to a thing before the right of action ripens in damages recovered. There is a right of action, but not a thing in action; the thing recovered existing only by the recovery. The broad sense of the term has certainly always included

torts; but not as happily as common-law terms are generally applied. Termes de la Ley, "*Chose en Action.*"

We took the section under which the respondent claims, substantially, from New York, where it was adopted in 1848. After twelve years experience in that state, the legislature adopted the statute cited in the opinion of Mr. Justice COLE on this appeal. The fact appears to be conclusive of the view in New York, that the provision of 1848 did not secure rights of action in tort to married women, as if they were sole. If the legislature here should desire to extend the right to married women, they certainly have the power. This court as certainly has not. We must deal with the statute as it is written.

All this is implied in the opinion delivered upon the hearing of this appeal, in which we all concur. And so much has been said, in deciding this motion, out of deference to the very learned and able discussion of the respondent's counsel.

*By the Court.* — The motion is overruled.