P.V.N. ACHARYA, Plaintiff-Appellant-Cross Respondent,

v.

Donald E. CARROLL and Northwestern National Insurance Company, Defendants-Respondents-Cross Appellants. †

Court of Appeals

*No. 88-0981. Submitted on briefs May 8, 1989.—Decided September 21, 1989.*

(Also reported in 448 N.W.2d 275.)

†Petition to review denied.

331

For the plaintiff-appellant-cross respondent the cause was submitted on the briefs of *A. Steven Porter*, of Madison.

For the defendants-respondents-cross appellants the cause was submitted on the briefs of *Bell, Metzner, Gierhart & Moore, S.C.* by *Virginia L. Newcomb*, of Madison.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

GARTZKE, P.J.   P.V.N. Acharya appeals from a summary judgment dismissing his legal malpractice action against attorney Donald Carroll and Carroll's liability insurer, Northwestern National Insurance Company. The trial court dismissed the action on grounds that the three-year statute of limitations in sec. 893.54, Stats., had run. We conclude that the six-year statute of limitations in sec. 893.53 applies. We therefore reverse the judgment dismissing Acharya's action. Carroll and Northwestern cross-appeal from an earlier order denying their motion for summary judgment predicated on Acharya's claimed inability to prevail in the case "within" the case.[1] We affirm that order and remand for

---

[1] On March 29, 1989, Carroll and Northwestern moved for

trial.

## 1. STATUTE OF LIMITATIONS

On December 30, 1986 Acharya filed his malpractice complaint against Carroll and Northwestern in circuit court. He alleges that he retained Carroll as his attorney in October 1978 to handle his civil rights case against the University of Wisconsin before the Wisconsin personnel commission, the federal equal employment opportunity commission, and the federal district court for the western district of Wisconsin. He alleges that, due to Carroll's negligence, he was unsuccessful in each proceeding. He alleges that on June 25, 1982, when the federal district court dismissed all but one of his claims, he first discovered Carroll's negligence.[2]

An action against an attorney for malpractice may sound in tort or in contract. *Boehm v. Wheeler,* 65 Wis. 2d 668, 676, 223 N.W.2d 536, 540 (1974). Acharya alleges negligence. His case sounds in tort.

The trial court concluded that the issue is whether Acharya's case falls within sec. 893.52, Stats., or sec. 893.54. The court held that the three-year limitation in sec. 893.54 applies. It did not discuss sec. 893.53. Acharya had brought sec. 893.53 to the trial court's attention.[3]

---

reconsideration of our granting of a motion by Acharya to supplement the record. The motion to reconsider is denied.

[2]The trial court held that the date of discovery, or the date discovery should have occurred, determines the date a tort claim accrues in legal malpractice cases, citing *Hansen v. A.H. Robins, Inc.,* 113 Wis. 2d 550, 560, 335 N.W.2d 578, 583 (1983). That ruling is uncontested on appeal.

[3]Section 893.52, Stats., provides: "An action, not arising on contract, to recover damages for an injury to real or personal

■ The facts are uncontested, insofar as they pertain to the statute of limitations issue. Which statute applies to the facts is a question of law which we decide independently of the trial court's analysis. *Kempfer v. Evers,* 133 Wis. 2d 415, 417, 395 N.W.2d 812, 813 (Ct. App. 1986).

■ We begin our analysis by noting that "the nature of a legal malpractice action is not determined by the nature of the underlying action or transaction in which the attorney erred." 2 R. Mallen & J. Smith, *Legal Malpractice* sec. 18.2 at 68 (3d ed. 1989). Thus, the limitations period applicable to Acharya's civil rights action against the university does not determine the statute of limitations applicable to his tort claim against his attorney for malpractice.

Section 893.52, Stats., establishes a six-year limitation on actions to recover for an injury to "personal property." When construing Wisconsin laws, the courts must follow the rules stated in sec. 990.01, Stats., unless construction in accordance with a rule would produce a

---

property shall be commenced within 6 years after the cause of action accrues or be barred, except in the case where a different period is expressly prescribed."

Section 893.53 provides: "An action to recover damages for an injury to the character or rights of another, not arising on contract, shall be commenced within 6 years after the cause of action accrues, except where a different period is expressly prescribed, or be barred."

Section 893.54 provides: "The following actions shall be commenced within 3 years or be barred: (1) An action to recover damages for injuries to the person. (2) An action brought to recover damages for death caused by the wrongful act, neglect or default of another."

result inconsistent with the manifest intent of the legislature. Section 990.01(27) provides that "personal property" includes "things in action." According to *Gibson v. Gibson*, 43 Wis. 23, 32, 35 (1877) (Ryan, C.J., on rehearing), a right of action in tort is not within the meaning of then sec. 1(14), ch. 5, Revised Stats. 1871, now sec. 990.01(27), which defines "personal property" for purposes of construing Wisconsin laws. The *Gibson* court reached that conclusion even though the statutory definition of personal property in 1877, as now, included "things in action."

*Gibson* has never been overruled.[4] The statutory definition of personal property has never been amended since *Gibson*, except to add "energy" to the definition. *See* sec. 6, ch. 261, Laws of 1951. The *Gibson* construction of the statutory definition must be deemed to be part of the statute which is now sec. 990.01(27), Stats. *See Bruner v. Department of Revenue*, 57 Wis. 2d 70, 75–76, 203 N.W.2d 663, 665–66 (1973) (prior case law construing statute not overruled when statute later amended with no change to phrase construed).

Because the statutory definition of "personal property" does not include rights of action, the six-year limitation in sec. 893.52, Stats., does not apply to a tort action for legal malpractice for injury to a prior right of action. This is not to say that a right of action is not property for purposes outside Wisconsin's statutory definition of "personal property." State civil rights claims, for instance, are property within the meaning of the due process clause of the fourteenth amendment to the

---

[4]And we may not do so. "[A] court of appeals decision which effectively overrules a controlling decision of the Wisconsin Supreme Court is patently erroneous and usurpative." *State v. Grawien*, 123 Wis. 2d 428, 432, 367 N.W.2d 816, 818 (Ct. App. 1985).

United States Constitution. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428–29 (1982). A Wisconsin tort claim held by a debtor in bankruptcy is "property of the estate," within the meaning of 11 U.S.C. sec. 541(a)(1), although the debtor may exempt the claim from the estate under 11 U.S.C. sec. 522(b)(2)(A). *Matter of Brandstaetter,* 36 B.R. 369 (Bankr. E.D. Wis. 1984), *aff'd on other grounds,* 767 F.2d 324 (7th Cir. 1985).

Nor does sec. 893.54(1), Stats., the three-year limitation on actions to recover damages for "injuries to the person," cover a tort action for legal malpractice. The term "injuries to the person" connotes bodily injuries, whether physical or emotional. Subsection (2) of the statute, which makes the three-year statute applicable to a wrongful-death action, reinforces our construction.

Our holding that "injuries to the person," as used in sec. 893.54(1), Stats., does not include a legal malpractice tort claim is consistent with the conclusions of most other jurisdictions. "With few exceptions, . . . the courts have concluded that legal malpractice does not cause personal injuries and, therefore, is not governed by a personal injury tort statute of limitations." 2 R. Mallen & J. Smith, *supra,* sec. 18.6 at 75–76.

Because no other statute of limitations covers a tort action for legal malpractice, the six-year limitation in sec. 893.53, Stats., applies. That statute applies to an action to recover damages for an injury to the "rights of another, not arising on contract, . . . except where a different period is expressly prescribed." *Id.* Section 893.53 is a blanket limitation on tort actions when no other period of limitation is expressly prescribed." *See Woodman v. Goodrich,* 234 Wis. 565, 566–67, 291 N.W. 768, 769 (1940) (because no other period of limitation on

commencement of tort action for criminal conversation was expressly prescribed in statutes, six-year limitation in what is now sec. 893.53 applies).[5]

Because Acharya commenced this action within six years after he discovered the alleged negligence, he timely commenced this action. We reverse the order of the trial court dismissing his action on the basis of a three-year statute of limitations.

## 2. *PRIMA FACIE* RETALIATION CASE

Section 802.08, Stats., governs summary judgment. The methodology for summary judgment has been discussed in many cases, such as *Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476–77 (1980). We do not repeat it. Our review is *de novo* and independent of the trial court's decision. *Id.*

The complaint alleges that Carroll negligently handled Acharya's claims against the university by naming

---

[5]Acharya cited three cases for the proposition that the six-year limitation of sec. 893.52, Stats. (injury to property), applies to his legal malpractice action: *Auric v. Continental Cas. Co.,* 111 Wis. 2d 507, 331 N.W.2d 325 (1983), *Boehm v. Wheeler,* 65 Wis. 2d 668, 223 N.W.2d 536 (1974), and *Denzer v. Rouse,* 48 Wis. 2d 528, 180 N.W.2d 521 (1970). None is on point. When *Boehm* and *Denzer* were decided, the separate limitation periods in the present-day secs. 893.52 and 893.53, Stats., were combined in a single statute. Sec. 893.19(5), Stats. 1969 and 1971 (six-year limitations period for "an injury to property, or for an injury to the character or rights of another, not arising on contract"); *Boehm* at 675–76, 223 N.W.2d at 539–40; *Denzer* at 531, 180 N.W.2d at 523. That combined statute then governed legal malpractice actions. Which limitation period applied did not arise on the facts in *Auric,* 111 Wis. 2d at 516–17, 331 N.W.2d at 330.

the wrong parties in a Title VII action, 42 U.S.C. secs. 2000e to e–17, failing to properly pursue that claim, and failing to include claims based upon 42 U.S.C. secs. 1981, 1983, and 1985(3), and upon the Wisconsin law of defamation and interference with contract.

■ A complaint pleading legal malpractice must allege (1) the existence of the relationship of attorney and client, (2) the acts or omissions constituting the alleged negligence, (3) cause, and (4) injury. *Lewandowski v. Continental Casualty Co.,* 88 Wis. 2d 271, 277, 276 N.W.2d 284, 287 (1979). The establishment of causation and injury may, as here, involve allegations that the attorney's negligence deprived the plaintiff-client of a successful prosecution or defense of a prior claim. *Glamann v. St. Paul Fire & Marine Ins.,* 144 Wis. 2d 865, 870, 424 N.W.2d 924, 926 (1988). Thus, a legal malpractice action often involves litigation of a case "within" the malpractice case.[6]

Acharya's complaint alleges each element of a malpractice action. It therefore states a claim. The answers of Carroll and Northwestern deny that the attorney-client relation existed, deny negligence, and deny that Acharya suffered an injury. The pleadings establish disputed issues of material fact as to each element of the legal malpractice claim.

Carroll and Northwestern moved for summary judgment on grounds that Acharya could not have proved one of his "cases within the case," a *prima facie* retaliatory discrimination case against the university. For that

---

[6]"[T]o some extent in a legal malpractice suit, the plaintiff is compelled to prove two cases in a single proceeding. The requirements of causation dictate that the merits of the malpractice action depend upon the merits of the original claim." *Lewandowski,* 88 Wis. 2d at 277, 276 N.W.2d at 287 (footnote omitted).

reason, Carroll and Northwestern contend that Acharya could not have won his Title VII action in federal court. Because that earlier action was filed in the federal district court for the western district of Wisconsin, we follow the decisions of the United States court of appeals for the seventh circuit with respect to the case within the case. *See Goolsby v. Gagnon,* 322 F. Supp. 460, 465 (E.D. Wis. 1971) (Wisconsin district court bound by seventh circuit decisions on federal law).

To establish a *prima facie* case of retaliation in violation of 42 U.S.C. sec. 2000e-3, a plaintiff must show that (1) plaintiff engaged in statutorily protected expression; (2) plaintiff suffered an adverse action by the employer; and (3) a causal link exists between the protected expression and the adverse action. *Collins v. State of Ill.,* 830 F.2d 692, 702 (7th Cir. 1987). A *prima facie* case of retaliation gives rise to a rebuttable presumption that Title VII was violated. *Klein v. Trustees of Indiana University,* 766 F.2d 275, 280 (7th Cir. 1985). To rebut that presumption, the defendant must articulate a legitimate, nonretaliatory reason for its action. *Id.* If the defendant meets that burden of production, the plaintiff must present evidence that the proffered reason for the action was pretextual. *Id.* at 281. That showing may be made by circumstantial evidence from which the trier of fact could reasonably infer that retaliation was a determining factor in the employment decision. *Id.* at 282.

Factual inferences can be critical to a determination under sec. 802.08(2), Stats., the summary judgment statute, whether "there is no genuine issue as to any material fact and [whether] the moving party is entitled to a judgment as a matter of law."

340

> The inferences to be drawn from the underlying facts contained in the moving party's material should be viewed in the light most favorable to the party opposing the motion. If the movant's papers before the court fail to establish clearly that there is no genuine issue as to any material fact, the motion will be denied. If the material presented on the motion is subject to conflicting interpretations or reasonable people might differ as to its significance, it would be improper to grant summary judgment.

*Grams,* 97 Wis. 2d at 339, 294 N.W.2d at 477. Summary judgment should not be granted where "reasonable inferences leading to conflicting results can be drawn from undisputed facts." *Maynard v. Port Publications, Inc.,* 98 Wis. 2d 555, 563, 297 N.W.2d 500, 505 (1980) (citation omitted).

That Acharya could establish the first element of a *prima facie* retaliation case against the university, his having engaged in a protected activity, is uncontested. Acharya had in 1974 filed a discrimination complaint against the university. The second and third elements of the *prima facie* case within the case are contested. We therefore examine Carroll's supporting affidavits to determine whether the facts asserted in those affidavits, viewed in the light most favorable to Acharya, establish that no genuine issue exists as to a material fact.

Carroll's affidavits establish that the department of pathology did not have an opening for which Acharya was qualified when he applied. For that reason, Carroll argues that he has established a defense to the second element of a *prima facie* case for retaliation, since Acharya could not have suffered an adverse action by the employer.

However, Carroll's affidavits also contain statements by faculty members that the department had

occasionally created new positions for especially attractive candidates. His affidavits additionally show that the resolution before the department in May 1978 was whether Acharya should be considered for a tenure-track professorial position within the department of pathology. If the department had consistently rejected applications of those seeking nonexistent positions, a vote on Acharya's application would have been unnecessary. A factfinder could reasonably infer that the department took adverse action against Acharya by failing to create a tenured position for him, since it had created new positions for others. Carroll's affidavits therefore fail to show that no factual issue exists as to whether Acharya suffered an adverse action by the university.

Carroll also contests the third element of the *prima facie* case, a causal connection between the protected activity and the adverse action. We examine his affidavits to determine if he established a defense to that element of the retaliation case against the university.

Carroll's affidavits show that the department articulated legitimate reasons for adverse action against Acharya. Thirteen members of the department state that they voted against considering Acharya for a tenured position because no position was then available and because they did not wish to see the department move in the direction of environmental biochemical pathology, the area in which Acharya was qualified. Three other members state that they voted against opening a position because Acharya lacked sufficient teaching experience and publications. Carroll's affidavits, viewed alone, would entitle him and Northwestern to judgment, since the only reasonable inference drawable from those facts is that the department chose not to open a position for Acharya for legitimate, nonretaliatory reasons.

Because Carroll's affidavits, viewed in the light most favorable to Acharya, establish a defense provisionally dispositive of the retaliation case, we turn to the affidavits Acharya submitted in opposition to the motion for summary judgment. *Grams,* 97 Wis. 2d at 338, 294 N.W.2d at 477. We examine Acharya's affidavits to determine whether they allow the drawing of reasonable inferences that the department's articulated reasons were pretextual and that a causal connection did exist between his 1974 discrimination complaint and the alleged adverse action by the department in 1978.

According to Acharya's affidavits, one member of the department had testified before the state personnel commission that he first heard of Acharya's 1974 discrimination claim at the 1978 meeting at which Acharya's application was voted down. Another member testified that the chairman of the department had said, some months before the vote was taken, that Acharya had "burned his bridges" at the university by filing his discrimination claim. A factfinder could reasonably infer from those facts that the topic of his 1974 discrimination claim arose at the meeting before the vote was taken on his application and that his discrimination claim was a factor in the vote against his application. A factfinder could also reasonably infer that the articulated reasons for the vote are pretextual, and the real reason his application was voted down was his 1974 discrimination claim. *See Klein,* 766 F.2d at 281 (evidence introduced to prove *prima facie* discrimination case may also prove pretext); *Collins,* 830 F.2d at 705 (evidence offered to establish *prima facie* case of retaliation may also show defendant's explanation was pretextual).

Thus, Carroll's contention that no causal link existed between Acharya's discrimination claim and the

adverse action is met by Acharya's affidavit opposing the motion for summary judgment. Since genuine and material issues of fact exist relevant to that contention and the contention that there was no adverse action, sec. 802.08(2), Stats., requires that they be resolved by trial. [7] We therefore affirm the trial court's order denying Carroll's motion for summary judgment.

*By the Court.*—Judgment reversed; order on cross-appeal affirmed; cause remanded for trial.

---

[7]We have not decided whether Acharya will ultimately prevail in his claim against Carroll and, by implication, the university. "On a motion for summary judgment, the court does not try the issues,—it merely decides whether there is an issue for trial." *Holzinger v. Prudential Ins. Co.*, 222 Wis. 456, 461, 269 N.W. 306, 308 (1936).