The ESTATE OF Ronald CAMPBELL, by its Personal Representative, The First Wisconsin National Bank of Oshkosh, and Catherine Campbell, Susan Karstedt, and Terressa Campbell, Plaintiffs-Appellants,

v.

Wayne CHANEY, Jack Steinhilber, and Continental Casualty Insurance Company, Defendants-Respondents.†

Court of Appeals

*No. 91–0990. Submitted on briefs January 8, 1992.—Decided May 7, 1992.*

(Also reported in 485 N.W.2d 421.)

†Petition to review denied.

399

401

For the plaintiffs-appellants the cause was submitted on the briefs of *Timothy J. Aiken* and *Kelly L. Centofanti* of *Aiken & Scoptur, S.C.* of Milwaukee.

For the defendants-respondents, Jack Steinhilber and Continental Casualty Company, the cause was submitted on the brief of *David Colwin* of *Colwin & English, S.C.* of Fond du Lac.

For the defendants-respondents, Wayne Chaney and Continental Casualty Company, the cause was submitted on the brief of *James Samuelsen* of *Godfrey, Trump & Hayes* of Milwaukee.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

DYKMAN, J.  The Estate of Ronald Campbell and several of Campbell's children appeal from an order requiring them to prove a "suit within a suit" in this legal malpractice action. Campbell's widow challenged a prenuptial agreement drafted for him by the defendant attorneys. The estate settled and then sued the attorneys for negligence in preparing the agreement. The issue is whether the estate must try a suit within a suit to show that it would have lost the litigation with the widow. We conclude that such a procedure is unnecessary. We reverse.

## I. BACKGROUND

The following facts are not in dispute. In April 1985, attorneys Wayne Chaney and Jack Steinhilber drafted a prenuptial agreement for Ronald Campbell. Campbell reviewed it in May with his future wife, Carla Kane. On the recommendation of Chaney, Carla consulted with an

independent attorney, who recommended that she not sign the agreement because it would be inequitable, the parties had not made sufficient financial disclosure and he needed more time to review it. The agreement itself contained no financial disclosures. Carla signed the unamended agreement on May 24.

Ronald and Carla remained married for approximately three years until Ronald's death. The parties appear to agree that his estate was worth six to eight million dollars. The prenuptial agreement provided Carla with $500,000. She challenged the agreement during probate on the grounds of duress, undue influence, breach of the agreement, misrepresentation, inadequate provision and inadequate financial disclosure. Were Carla's claim successful, she would have been entitled to one-half of the estate, or approximately three to four million dollars.[1] *See* sec. 852.01(1)(a)2, Stats. The parties settled before trial for one million dollars. Carla received, therefore, approximately $500,000 more than she would have under the agreement.[2]

The estate then brought this action against attorneys Chaney and Steinhilber. It claimed that their negligence in drafting the prenuptial agreement caused Carla to sue the estate and caused it to settle, resulting in unspecified damages. The estate moved for a pretrial order that it would not be required to try a suit within a suit. The defendants opposed the motion and responded

---

[1]Apparently Campbell died intestate. The estate alleges that attorney Chaney drafted a will and trust for the decedent, but that the trust documents could not be found upon his death, invalidating the will. The complaint in this action alleges that Chaney was negligent with respect to the trust, but the allegation is not involved in this appeal.

[2]Calculation of the exact figure requires a consideration of present value and tax implications.

with a motion for summary judgment based on the depositions of the estate's legal experts. The estate had retained two legal experts for use during the probate action and another two for use in the present one. As part of their motion for summary judgment, the defendants asserted that all four experts stated that the probate court probably would have rejected Carla's challenge to the prenuptial agreement, had it gone to trial.

The court ruled that a suit within a suit was necessary. Counsel for the estate said at the hearing that if the court so ruled, it would be "impossible" for the estate to win such a case. The court granted defendant's motion for summary judgment, and the estate appeals.

## II. ANALYSIS

A legal malpractice plaintiff must establish (1) the existence of an attorney-client relationship, (2) the acts or omissions constituting the alleged negligence, (3) cause and (4) injury. *Acharya v. Carroll,* 152 Wis. 2d 330, 339, 448 N.W.2d 275, 279 (Ct. App. 1989). A client cannot prove injury by showing only that litigation was prevented or impaired, since the loss of the ability to litigate is not itself worth anything. *See Gustavson v. O'Brien,* 87 Wis. 2d 193, 199, 274 N.W.2d 627, 630 (1979) (an appeal has value only if it can be won). If attorney negligence deprived the client of the prosecution or defense of a prior claim, the client proves injury by showing that he or she would have been successful in that claim. *Acharya,* 152 Wis. 2d at 339, 448 N.W.2d at 279–80; *Lewandowski v. Continental Casualty Co.,* 88 Wis. 2d 271, 277, 276 N.W.2d 284, 287 (1979). This is often done by trying the original case as part of the malpractice action, a process known as a "suit within a

suit." *Helmbrecht v. St. Paul Ins. Co.,* 122 Wis. 2d 94, 103, 362 N.W.2d 118, 124 (1985).

In the present case, the estate alleges that the defendants were negligent in drafting a document, not in the prosecution or defense of a prior claim. The trial court held that the estate must prove that the prenuptial agreement would not have been enforced by the probate court. Whether the trial court was correct is a question of law that we review *de novo.*

The estate argues that *Gustavson,* 87 Wis. 2d 193, 274 N.W.2d 627, is analogous to this case, and we agree. The plaintiffs in that legal malpractice action asked their attorney to convey property from themselves, as individuals, to their corporation. He did not. The plaintiffs insured the property in the name of the corporation. After it was damaged by fire, the insurer denied coverage on the ground that the named insured lacked an insurable interest. The plaintiffs sued the insurer and settled for a sum less than their fire loss. To recover the difference, their legal expenses and other damages, the plaintiffs sued their attorney for his failure to transfer ownership. The trial court determined that the attorney had been negligent as a matter of law. The jury found against him on causation and damages, and he appealed on those issues. *Id.* at 196–98, 274 N.W.2d at 629–30.

The attorney argued that it was necessary for the plaintiffs to pursue the coverage issue to judgment before the jury could determine that the attorney's negligence caused their damages. *Id.* at 197, 274 N.W.2d at 630. The court stated that the issue resolved itself as to whether the evidence was sufficient, in the absence of a judicial determination of insurable interest, to support a finding that the negligence of the attorney was a substantial

factor in causing the damages sustained by the plaintiffs. *Id.* at 198, 274 N.W.2d at 630.

The court concluded that the evidence was sufficient to support such a finding. The plaintiffs had proved that they suffered fire losses entitling them to the full insurance policy limit, that the insurer denied coverage because of the lack of insurable interest, and that the plaintiffs settled for a sum less than the policy limit. *Id.* at 200, 274 N.W.2d at 631. They proved that the insurers were able to deny coverage because the attorney had failed to transfer the title, and that the plaintiffs had to bring suit to obtain coverage. *Id.* The court concluded:

> [Plaintiffs] proved very specific damages which they would not have suffered if [the attorney] had transferred the property as instructed. The causal connection between [the attorney's] negligence and the denial of coverage is clear. [The attorney's] failure to follow his client's instructions was a substantial factor in allowing the insurers to deny coverage.
>
> Having negligently put the [plaintiffs] in the position of having to engage in litigation to protect their rights, [the attorney] is responsible for all damages proximately resulting.

*Id.*

The *Gustavson* court then considered the issue of damages. The attorney argued that the plaintiffs were entitled to full insurance coverage and should have litigated that issue to judgment. He argued that the plaintiffs' deficiency between full coverage and the settlement amount was caused by their willingness to settle for less than the full amount, and could not be assessed against him. The court rejected that argument:

> [The attorney] ignores the fact that the insurers maintained to the end that there was no insurable

interest and the trial court was of the opinion the position of the insurers was a strong one. The settlement was a bona fide attempt by the [plaintiffs] to mitigate their damages and bring the litigation to an end . . .. [C]lients should not be forced to litigate such issues to judgment . . ..

In this case the lawyer's negligence has forced the client to litigate an arguably meritorious issue and a fair settlement was reached, not hastily, but after extensive negotiations. Public policy alone should not preclude the client from proceeding against the lawyer for any deficiency that can be definitely established.

. . ..

[The insurable interest issue] could well have litigated to the extent of an appeal to this court. In such a case a reasonable settlement made in good faith and after commencing litigation and extended negotiations, cannot be construed as a waiver of the client's rights . . .. *Whether or not [the plaintiffs] would have ultimately been able to establish coverage is not in issue here. The question is whether [the attorney's] negligence forced the [plaintiffs] to engage in litigation they otherwise would not have had to engage in.*

*Id.* at 201–03, 274 N.W.2d at 631–32 (emphasis added). The court allowed the plaintiffs to recover the deficiency between the settlement and the policy amount, the expenses of litigation with the insurer, and other damages. *Id.* at 203, 274 N.W.2d at 632.

We conclude that the reasoning in *Gustavson* applies to the case before us. *Gustavson* held that the plaintiffs could recover their deficiency from settlement, and other damages caused by their attorney's negligence, without having to prove that they would have lost the litigation with the insurer. Similarly, it is unnecessary

408

for the estate to prove that it would have lost the litigation with the widow in order to recover the cost of litigating and settling her claim. Paraphrasing *Gustavson,* whether or not the widow would have been held to the terms of the prenuptial agreement is not in issue here. The question is whether the defendant's alleged negligence forced the estate to engage in litigation it otherwise would not have had to engage in.[3]

Defendant Steinhilber argues that this reasoning makes a drafting attorney an insurer that the document will never be challenged, since we are essentially holding that negligence is proved simply by showing that the document was attacked in litigation. That is not our holding. To establish that the defendants were negligent, the estate will still have to prove that the attorneys breached the standard of professional care in drafting the prenuptial agreement. If a document is attacked in litigation, but the attorneys were not negligent in preparing it, they cannot be held liable.

Furthermore, the estate will have to establish causation similar to the chain described in *Gustavson,* 87 Wis. 2d at 200, 274 N.W.2d at 631. The estate will have to show that the attorneys' negligence caused weakness in the prenuptial agreement and that the weakness caused litigation. To recover the difference between the settlement and the prenuptial agreement's payout, the estate must prove that the weakness of the agreement caused its decision to settle, since that settlement might also have been caused by strength in other aspects of the widow's case, such as duress, that had nothing to do with

---

[3]This court applied *Gustavson* in similar fashion in a case involving negligence by a bank acting as trustee. *In re McCoy,* 142 Wis. 2d 750, 759–62, 419 N.W.2d 301, 306–07 (Ct. App. 1987).

the weakness of the prenuptial agreement. The estate must show that the settlement was reasonable and made in good faith. *Id.* at 203, 274 N.W.2d at 632.

The defendants argue that a suit within a suit is necessary to prove that they committed "legal error" by drafting an agreement that could not be enforced. But the negligence of an attorney does not depend on whether the agreement can be enforced. If an attorney drafts a prenuptial agreement without attaching a financial statement, the fact-finder could conclude that the attorney failed to use reasonable care, that is, that the attorney was negligent. It is immaterial that the agreement might later be enforced after a finding that the widow already knew the financial information. The fact-finder could still find that the attorney failed to exercise reasonable care in drafting the agreement. If that failure caused the estate to settle a claim that a proper agreement would have made meritless, then the attorney may be held liable.

Steinhilber argues that drafting attorneys will be subject to liability in any case that is strong enough to induce a settlement. However, the client can recover for that settlement only by showing attorney negligence and causation. If the client settled despite a strong probability that it would prevail, the fact-finder might conclude that attorney negligence was not a "substantial factor" causing the settlement. *Pfeifer v. Standard Gateway Theater, Inc.,* 262 Wis. 229, 236–37, 55 N.W.2d 29, 32–33 (1952) ("substantial factor" is proper standard for causation). The fact-finder might also conclude that the settlement was not a "reasonable" one. *Gustavson,* 87 Wis. 2d at 203, 274 N.W.2d at 632.

410

Defendant Chaney argues that applying *Gustavson* in this case will deprive him of his right to a jury trial and his right to due process. He argues that elimination of the suit within a suit will prevent him from presenting his defense to a jury and gives the settlement decision a res judicata effect, which is unfair to him because he was not a party to that action or the settlement negotiations. We reject these arguments.

Chaney will have the opportunity to present a defense to a jury on each element, although the proof required will be different than he argued for. The estate's settlement will not have a preclusive effect. As we have stated, the defendants can argue that the settlement was not caused by their negligence or was unreasonable or made in bad faith.

We conclude that a suit within a suit is not necessary in this case. The trial court's order requiring such a procedure must be reversed.

*By the Court.*—Order reversed and cause remanded for further proceedings.