**Phillip F. WINSKUNAS, Plaintiff–Appellant,**

v.

**James G. BIRNBAUM and Wisconsin Lawyers Mutual Insurance Company, Defendants–Appellees.**

**No. 93–2641.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 24, 1994.

Decided May 12, 1994.

---

Michael R. Wherry, Perry H. Friesler (argued), Davis & Kuelthau, Milwaukee, WI, for plaintiff-appellant.

Ward I. Richter, Stephen Ehlke (argued), Bell, Metzner, Gierhart & Moore, Madison, WI, for James G. Birnbaum, Wisconsin Lawyers Mut. Ins. Co.

Before POSNER, Chief Judge, ROVNER, Circuit Judge, and GILBERT, District Judge.*

POSNER, Chief Judge.

The plaintiff in a diversity suit for legal malpractice appeals from the dismissal of his suit on the defendants' motion for summary judgment. The essential facts, construed as favorably to the plaintiff as the record permits, are as follows. In 1982 the executive board of a hospital recommended that Dr. Winskunas's surgical privileges be revoked. He requested review by the hospital's peer review committee and retained lawyer Birnbaum to represent him before the committee. He and Birnbaum made elaborate preparations for the hearing but when the time came the lawyer unaccountably failed to raise the points they had discussed, to call the right

* Hon. J. Phil Gilbert of the Southern District of Illinois.

witnesses, or, in short, to represent Winskunas competently. Winskunas was concerned about Birnbaum's performance but the lawyer told him not to worry; things were going well. Nevertheless the committee approved the board's recommendation to revoke Winskunas's privileges, as did a further review committee before which Birnbaum's performance was again lackluster at best. At that hearing Winskunas wrote himself a note saying, "Did Jim [Birnbaum] drop the ball again? I hope not." Winskunas's surgical privileges were revoked effective May 14, 1984. In July, after the hospital had notified the state medical examining board of its decision, Winskunas hired different counsel to try to save his medical license but retained Birnbaum to bring a suit in a Wisconsin state court to set aside the hospital's decision revoking his surgical privileges. Again (according to Winskunas, whose version of the facts we must accept for purposes of this appeal) Birnbaum represented Winskunas incompetently, and on November 10, 1987, the court rendered a decision dismissing the suit. Winskunas instructed Birnbaum to appeal the decision, but he failed to do so. Winskunas read the decision, in which the judge noted that one of the grounds on which he had rejected an affidavit submitted by Birnbaum was that "the unsigned affidavit was prepared pursuant to an adjournment procured, at least in part, by [Birnbaum's] chicanery." And about a year later Winskunas read in a newspaper article that in another case Birnbaum had been hit with a $1000 sanction for delay in discovery. At last the scales fell from Winskunas's eyes—yet he did not file this suit until 1992.

The district judge held that the suit, insofar as it challenges Birnbaum's representation of Winskunas before the peer review committee, is barred by the six-year statute of limitations that is applicable to malpractice actions in Wisconsin. *Acharya v. Carroll,* 152 Wis.2d 330, 448 N.W.2d 275, 277–79 (App.1989). Insofar as the suit challenges Birnbaum's conduct of the Wisconsin state court action and his failure to appeal from the decision in that suit, the defendants conceded that the suit was not time-barred but they argued and the district court agreed that this part of the suit was barred by the plaintiff's failure to present evidence that he could have won the state court action if competently represented.

■ . The general rule, in Wisconsin (*Hansen v. A.H. Robins, Inc.,* 113 Wis.2d 550, 335 N.W.2d 578 (1983); *Stroh Die Casting Co. v. Monsanto Co.,* 177 Wis.2d 91, 502 N.W.2d 132, 135–37 (App.1993)) as elsewhere (e.g., *Singletary v. Continental Illinois National Bank & Trust Co.,* 9 F.3d 1236, 1240 (7th Cir.1993)), is that the statute of limitations begins to run in a tort case as soon as the victim of the tort knows that he has been injured (and by whom, *Spitler v. Dean,* 148 Wis.2d 630, 436 N.W.2d 308, 310–11 (1989)), not later when he finds out that he has a legal claim arising out of the injury. *United States v. Kubrick,* 444 U.S. 111, 122–23, 100 S.Ct. 352, 359–60, 62 L.Ed.2d 259 (1979); *Kempfer v. Evers,* 133 Wis.2d 415, 395 N.W.2d 812 (App.1986). The very purpose of giving a plaintiff time, here a generous six years, in which to sue is to enable him to find out whether he has a claim against the person who injured him.

■ The application of this rule is difficult in malpractice cases because the injury and the claim tend to merge. If a person goes to a doctor with a complaint and is treated and nevertheless dies, it may be entirely unclear whether it was the doctor who killed him or the disease that brought him to the doctor which killed him. And in this legal malpractice case it may have been unclear, initially at any rate, whether the hospital, or lawyer Birnbaum, or both, or for that matter Winskunas himself—or all three—had, or more precisely ought to be deemed to have, caused the revocation of hospital privileges and the resulting loss of income and other harm. Understanding such a case requires recognition that the relevant knowledge is not only knowledge that one has been injured but also knowledge that one may have been injured by someone who conceivably might be legally liable. *Hennekens v. Hoerl,* 160 Wis.2d 144, 465 N.W.2d 812, 819 (1991). Without knowing that, the plaintiff would have no reason to begin to investigate the possibility that his legal rights had been infringed. If one's house burns down in unsuspicious circum-

stances—say in the midst of an electrical storm—and years later one discovers that in fact it had been torched by a business rival, one ought not be time-barred from suing him. That would be functionally the same case as where one knows that one has been tortiously injured but not by whom. *Spitler v. Dean, supra.*

There are two doctrinal paths to this conclusion. The first is that the cause of action does not accrue, that is, the statute of limitations does not begin to run, until the plaintiff learns not only that he has been injured but also that the injury may have had a culpable source. The second is that the statute of limitations begins to run when the plaintiff learns that he has been injured, but its running is arrested for as long as it would take him with reasonable diligence to discover that he had been injured by someone who might be legally liable for the injury, and to prepare and file a suit against that someone. The second approach goes by the name "equitable tolling" and differs from the first or accrual approach only in that the plaintiff must act with reasonable diligence throughout, rather than having the full statutory period after discovery of the facts that he needs in order to sue within which to file the suit. *Singletary v. Continental Illinois National Bank & Trust Co., supra,* 9 F.3d at 1243.

■ The Wisconsin cases do not distinguish between the two approaches; indeed it is not clear that the doctrine of equitable tolling exists in Wisconsin. *Esser Distributing Co. v. Steidl,* 145 Wis.2d 160, 426 N.W.2d 62, 67 (App.1988), aff'd, 149 Wis.2d 64, 437 N.W.2d 884 (1989). In some cases the distinction could be important, as we have just indicated, but not in this one. Under either approach a plaintiff cannot sit back when he learns that he has been injured. He must make reasonable efforts to find out whether the injury came from a source that he can sue. Winskunas was injured in May 1984 when his surgical privileges were revoked. He could not be sure that the cause of the injury, or at least a cause sufficient to support a lawsuit, was negligence on the part of his lawyer. But he should have had a lively suspicion that such negligence had played a

role. He *did* have a lively suspicion; he acknowledges, as he must in light of the "Jim dropped the ball again" note and other evidence, that he had what he redundantly terms a "subjective hunch" that Birnbaum had blown his case. A reasonable person in Winskunas's position would not have needed eight years to decide that Birnbaum had committed malpractice and to file this suit so charging. Whatever the precise level of suspicion necessary to impose a duty of inquiry under either formulation discussed above, Winskunas had it in 1984; and so clear is this that the district judge was entitled so to find on summary judgment.

■ We turn to the later acts of alleged malpractice—Birnbaum's conduct of the state court suit challenging the hospital's revocation of Winskunas's surgical privileges and his failure to appeal the defeat in that suit. A suit for legal malpractice based on the handling of a trial or other litigation entails a suit within a suit in the following sense: the plaintiff cannot recover for legal malpractice if, even had he been competently represented, he would have lost the suit that his lawyer bobbled. *Glamann v. St. Paul Fire & Marine Ins. Co.,* 144 Wis.2d 865, 424 N.W.2d 924, 926 (1988). For then he has not been injured by the bobble, and injury is an essential element of every tort, including the tort of legal malpractice. *Lewandowski v. Continental Casualty Co.,* 88 Wis.2d 271, 276 N.W.2d 284 (1979); *Estate of Campbell v. Chaney,* 169 Wis.2d 399, 485 N.W.2d 421, 423 (App.1992). When as in the present case a defendant moves for summary judgment on the ground that the plaintiff lacks evidence of an essential element of his claim, the plaintiff is required by Fed.R.Civ.P. 56, if he wants to ward off the grant of the motion, to present evidence of evidentiary quality—either admissible documents or attested testimony, such as that found in depositions or in affidavits—demonstrating the existence of a genuine issue of material fact. *Lujan v. Defenders of Wildlife,* —— U.S. ——, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Lovejoy Electronics, Inc. v. O'Berto,* 873 F.2d 1001, 1005 (7th Cir.1989). The evidence need not be in

admissible *form;* affidavits are ordinarily not admissible evidence at a trial. But it must be admissible in *content,* in the sense that a change in form but not in content, for example a substitution of oral testimony for a summary of that testimony in an affidavit, would make the evidence admissible at trial. *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. at 2553; *United States v. 1 Parcel of Real Property,* 904 F.2d 487, 491 (9th Cir. 1990). Occasional statements in cases that the party opposing summary judgment must present admissible evidence, e.g., *Sokaogon Chippewa Community v. Exxon Corp.,* 2 F.3d 219, 224–25 (7th Cir.1993), should be understood in this light, as referring to the content or substance, rather than the form, of the submission.

 Birnbaum invoked this rule by arguing in his motion for summary judgment that Winskunas could not win the suit within a suit—could not, in other words, show injury from the alleged malpractice—because he had no evidence with which to overcome the presumption created by Wisconsin law that the members of a peer review committee acted in good faith, Wis.St.Ann. § 146.37, in which event their decision cannot be attacked in court. *Limjoco v. Schenck,* 169 Wis.2d 703, 486 N.W.2d 567 (App.1992); *Harris v. Bellin Memorial Hospital,* 13 F.3d 1082, 1086–90 (7th Cir.1993). Winskunas acknowledges that to prevail in his legal malpractice suit he would have to prove that the peer review committee which advised revoking his surgical privileges acted in bad faith. Yet he presented no evidence in opposition to the motion for summary judgment other than his own affidavit in which he states that he had heard, from someone he does not name, about ex parte communications between the hospital administration and the peer review committee. Even if he was identified, that someone's out of court declaration to Winskunas is pure hearsay, admissible under none of the myriad exceptions to the hearsay rule and therefore incapable of creating a *genuine* issue of material fact concerning the peer review committee's bad faith. Fed. R.Civ.P. 56; *Howell Hydrocarbons, Inc. v. Adams,* 897 F.2d 183, 192 (5th Cir.1990); cf. *Sokaogon Chippewa Community v. Exxon Corp., supra,* 2 F.3d at 224. If there is thus no evidence that Winskunas could have won his state court suit, by the same token there is no evidence that he could have gotten the loss reversed by the appeal that Birnbaum failed to take. Of course the lack of evidence may be due to Birnbaum's failure, itself possibly culpable, to have developed that evidence a decade ago in the proceedings before the hospital committees. But Winskunas's effort to obtain redress for that failure is, as we have seen, time-barred. There is no escape from the conclusion that Winskunas has failed to establish an essential element of so much of his malpractice claim as is not time-barred. The district judge was therefore correct to dismiss the suit in its entirety.

AFFIRMED.