Present: Carrico, C.J., Compton, Stephenson, Hassell, and Keenan, JJ., and Poff and Whiting, Senior Justices

HAZEL & THOMAS, P.C., et al.

v.   Record No. 950211

OPINION BY
SENIOR JUSTICE HENRY H. WHITING
January 12, 1996

SHAHRAM YAVARI, et al.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
J. Howe Brown, Jr., Judge

In this appeal in an attorney malpractice action, the dispositive issue is whether the client proved that the attorneys' negligence was a proximate cause of the client's loss. Therefore, we recite only those facts relevant to this issue, and, in accordance with familiar appellate principles, we state those facts in the light most favorable to the client, the prevailing party in the trial court.

In February 1990, Shahram Yavari asked Daniel H. Shaner, an attorney with the law firm of Hazel & Thomas, P.C. (Hazel & Thomas), to represent him in the negotiation of a sales contract for Yavari's $6.6 million purchase from James M. Kline of a 6.4259-acre tract of commercial property in the City of Alexandria. Since Yavari needed to quickly move his carpet sales and installation business from leased property, he told Shaner that he wanted to take possession of the Kline property immediately after signing the contract and to lease part of the property to tenants prior to closing on the contract, which was planned for September 1990.

Accordingly, Shaner negotiated the contract to provide Yavari with these rights. Pursuant to the contract, Yavari was to pay Kline a $1 million deposit that would be credited towards

the purchase price, but would be forfeited if Yavari failed to close on the property. The contract also required Yavari to execute a purchase money note in which he agreed to pay Kline 59 monthly payments of $60,500 in principal and interest, with a balloon payment of nearly $5 million 60 months after closing. The note was to be secured by a purchase money deed of trust on the property.

The contract also gave Kline the right to convey the property subject to the liens of three deeds of trust Kline had previously placed on the property. The total of the three liens was not to exceed $5.6 million at the time of closing. If Kline exercised this right, he was obligated to obtain the three lien creditors' consent to the sale.

The contract was signed on March 15, 1990 by Kline and by Yavari, Mehrdad Yavari, his wife, and his two corporations, Carpetland, Inc., and Mattress Land, Inc. (hereafter collectively Yavari). Yavari took possession of the property and timely paid the $1 million deposit to Kline.

After the contract was signed, Kline exercised his right to continue his existing financing and obtained the three lien creditors' consent to the sale. Although not required to do so by the contract, Kline, at Yavari's request, also sought to extend the maturity dates on his preexisting notes to conform to the maturity date on Yavari's purchase money note. General Motors Acceptance Corporation (GMAC), one of Kline's lien

-2-

creditors, agreed to extend the maturity date on the notes it held, but conditioned that consent on Kline continuing to be a franchised General Motors Corporation (GM) automobile dealer during the life of Yavari's purchase money note. If Kline ceased to be a GM dealer, then Kline's obligations to GMAC would immediately become due.

Yavari objected to this condition, fearing that if Kline ceased to be a GM dealer and defaulted on his obligations to GMAC, Yavari would have to pay in excess of $2 million prior to the due date of his balloon payment to protect his possessory rights in the property. To assuage Yavari's fears, Kline negotiated an agreement with GMAC providing that the obligations to GMAC would not become due until one year after any termination of Kline's dealership. However, this further agreement did not allay Yavari's concerns.

Yavari was unable to lease part of the property to prospective tenants. This inability arose because the parties with whom he was negotiating, large national companies such as Midas Muffler, Inc. (Midas), and National Tire Wholesalers (NTW), demanded nondisturbance agreements from Kline and the three lien creditors before leasing the property. In general, a nondisturbance agreement is one in which a lienholder of leased property agrees that, in the event of the lessor's default on his obligation secured by the lien, the lienholder will not disturb the lessee's leasehold rights, provided the lessee continues to

tender performance to the party succeeding to the lessor's rights. Kline refused to provide these agreements, asserting that the contract did not require him to do so, and that such agreements would place him at risk if Yavari defaulted on the contract.

When Yavari and Kline could not reach an agreement on these two issues, Yavari refused to close on the property. Kline then evicted him from the premises, retained the $1 million deposit, and instituted an action at law in the Circuit Court of the City of Norfolk for the recovery of additional damages because of Yavari's refusal to close. Following a bench trial, the court held that (1) Kline had performed all his contractual obligations, (2) Yavari had breached the contract by failing to close on the transaction, and (3) Kline suffered additional damages of $773,413.12. Accordingly, the court entered judgment against Yavari in that amount, and that judgment is now final.

In an amended motion for judgment, Shahram Yavari and his two corporations later sought damages for attorney malpractice against Hazel & Thomas, Shaner, and Frederick K. Roseman, another Hazel & Thomas attorney, who assisted Shaner in the transaction. At a jury trial, William R. Van Buren, III, qualified as an expert witness for Yavari on the issue of attorney malpractice in the fields of business and real estate transactions. Van Buren testified that the defendants violated the standard of care required of attorneys practicing in these fields in a number of

respects. Those violations included a failure to negotiate provisions in the contract requiring Kline to obtain (1) unconditional extensions of the maturity dates of his preexisting notes to match the maturity date on Yavari's purchase money note, and (2) nondisturbance agreements from Kline and the three lien creditors. The defendants offered expert testimony that they were free of negligence.

Following instructions on the issues of negligence and proximate cause, the jury returned a verdict in favor of Yavari against Hazel & Thomas and Shaner in the amount of $500,000. Hazel & Thomas and Shaner (hereafter collectively the defendants) appeal.[1]

The defendants raise a number of issues on appeal. Since the issue of proximate cause is dispositive, we only consider that issue and the contentions and facts relating thereto.[2]

Ordinarily, the fact finder decides whether a plaintiff has shown that the defendant's negligence was a proximate cause of

[1]Yavari does not assign cross-error to the judgment in favor of Roseman. Thus, that judgment is not before the Court.

[2]The defendants also argue that the evidence is insufficient to show that Shaner breached the standard of care. Since we conclude that the evidence is insufficient to show proximate cause, we will assume, without deciding, that the evidence is sufficient to show the alleged breaches of the standard of care.

the plaintiff's loss. Parham v. Albert, 244 Va. 73, 77, 418 S.E.2d 866, 868 (1992). When, however, the evidence is such that reasonable minds could not differ as to the outcome, the issue of proximate cause should be decided by the court, not the jury. Id. This rule applies equally in attorney malpractice cases, in which the client bears the burden of producing evidence that the attorney's negligence proximately caused the client's loss. Campbell v. Bettius, 244 Va. 347, 352, 421 S.E.2d 433, 436 (1992); Duvall, Blackburn, Hale & Downey v. Siddiqui, 243 Va. 494, 497, 416 S.E.2d 448, 450 (1992). Thus, Yavari had the burden of showing either that Kline would have agreed to include the above-listed provisions in the contract or that Yavari would not have signed the contract if Kline had refused to include them.

Recognizing this burden, Yavari relies on the following testimony from Kline:

```
Q:        . . . . Back in February and early
          March, before the Purchase Agreement was
          signed, if Mr. Yavari's lawyers had requested
          at that time of you inclusion of a
          nondisturbance provision in the contract,
          would you have granted it?

A:        I don't know.  It's problematical, but I
          certainly would have found a way to make the
          deal happen.
```

However, the defendants note Kline's testimony that he would not grant a nondisturbance agreement to Midas or NTW just before the proposed closing since they were leasing only parts of the property and that he did not want to be bound by the leases in

the event that Yavari defaulted on his note.  In our opinion, Kline's testimony is insufficient to support the inference that he would have agreed to a nondisturbance provision before signing the contract when he refused to agree to such a provision several months after signing the contract.

Furthermore, Yavari is unable to point to any evidence indicating that Kline would have agreed to bind himself to obtain his lien creditors' unconditional consent to extend the maturity dates on his preexisting notes to match the maturity date on Yavari's purchase money note.  More importantly, Yavari never testified that he would not have signed the contract without the inclusion of the two provisions specified above had his attorneys insisted on them and had Kline refused to agree to them.

Accordingly, we conclude that Yavari has failed to introduce sufficient evidence that his former attorneys' purported negligence was a proximate cause of his loss.  Therefore, we will reverse the judgment of the circuit court and enter final judgment for the defendants.

<u>Reversed and final judgment</u>.